# Waller *v.* The State.

## *Indictment for Murder.*

1. *Abstract, ambiguous, or indefinite charge.*—The giving of a charge which is abstract, ambiguous, obscure, or general and indefinite, but yet legally correct, will not work a reversal, unless it appears that the jury were misled by it.

2. *Self-defense; charge as to, ignoring fault and duty to retreat.*—In a case of homicide, where it appears that the defendant, on approaching a house in which deceased was, heard him cursing and abusing him, and replied with like words, but continued to advance, having his gun in his hand, that the deceased immediately arose, and started towards the door with his gun, and both parties fired as soon as he reached the door; charges requested, invoking the doctrine of self-defense, but ignoring the question of fault in bringing on the difficulty, and limiting the doctrine of retreat to the time when the deceased appeared at the door, are properly refused.

FROM the Circuit Court of Bullock.

Tried before the Hon. JESSE M. CARMICHAEL.

The defendant in this case, Jordan Waller, a freedman, was indicted for the murder of Dave Market, another freedman, by shooting him with a gun; was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of eight years. The evidence adduced on the trial, as stated in the bill of exceptions, showed that the difficulty between the parties occurred one night in December, 1889, about nine o'clock, at the house of Fannie Foxhall and Sarah Jane Kemp, two women who were related to the deceased, and who lived on the Turnipseed plantation; that the parties had a settlement on the morning of that day, relative to some cotton accounts, and the deceased was found indebted to the defendant to the amount of several dollars; that he did not then pay the indebtedness in full, but promised to pay the balance during the day, or soon, and some angry words passed between them; that he went to the defendant's house later in the day, for the purpose of paying the money, as he said, but did not find the defendant at home; that the defendant, hearing of this, started to hunt up the deceased, and followed him to the house of said women; that on approaching the house, within about sixty feet, he saw the deceased within, and heard him cursing and abusing him (the defendant); that he replied in like words,

and continued to advance; that the deceased at once jumped up, seized his gun, and started towards the door; and that when he reached the door, defendant being about thirty feet distant, the parties fired almost simultaneously, the deceased being almost instantly killed, and the defendant wounded in the side.    It appears, also, that each of the parties had been out hunting that day, and the gun of each was loaded with small shot, "Nos. 5, or 6."

This being "substantially all the evidence," the court charged the jury as follows: "If the jury find from all the evidence, beyond a reasonable doubt, that the deceased was in the house of Sarah Jane Kemp in the night-time, and the defendant went on the outside of the house, approaching, or standing near it; and that the deceased did not know that the defendant was on the outside, approaching or near to the house; and that the deceased was talking angrily about the defendant, and the defendant heard it, and continued to approach the house, repeating the language of the deceased; and that the deceased came to the door of the house, and that each presented their leveled guns, and fired at each other, although the deceased first raised his gun and fired a moment before the defendant fired; if such be the facts, the jury can not acquit the defendant, if he then killed the deceased by firing his gun at him, and it occurred in this county before the finding of the indictment in this case."

The defendant excepted to this charge, and also to the refusal of the court to give the following charges as asked:

1.   "If the defendant, from the outside of the house, saw the deceased cock his gun, and walk immediately to the door; and the defendant believed that the deceased intended'to shoot him; it was not the duty of the defendant to retreat, if by retreating he would have increased his danger."

2.   "Mere words can not justify an attempt to kill; and if the jury find from the evidence that Dave Market, at the time he was killed, was in the house of Fanny Foxhall and Sarah Jane Kemp, abusing and cursing the defendant; and that the defendant replied from the outside of the house, in the same language; and that the deceased immediately cocked his gun, and went to the door with his gun in his hand; and that the defendant, as a reasonable man, believed that it was necessary that he should shoot, in order to protect his person from great bodily harm; then the jury must find the defendant not guilty, if they further find that he, as a prudent man, believed that he would increase his own danger by retreating."

[Waller v. The State.]

3. "If the jury find from the evidence that the defendant, on the day Dave Market was killed, got his gun for the purpose of hunting, and did afterwards go out hunting, and did not afterwards go home during the day, but kept his gun in his possession for convenience, and not for the purpose of defending himself, or for the purpose of injuring any person; and that while the gun was so in his possession he was told that Dave Market was hunting for him, to pay him the money he owed him, and was then at the house of Fanny Foxhall; and that defendant, still having his gun in his possession, went to the house of Fanny Foxhall to see Dave Market, to get his money, and for no other purpose; and that on arriving at the house he heard Dave Market curse him, and accuse him and other negroes of having tried to injure him; and that defendant, on hearing said Dave Market so curse and abuse him, said that it was a d—d lie; and that Dave Market immediately cocked his gun, which he then had, raised it and fired, and shot defendant; and that defendant then had no opportunity to retreat, and immediately shot and killed Dave Market,—then they must find defendant not guilty.

4. "If the defendant, from the outside of the house, saw the deceased cock his gun, and walk immediately to the door; and the defendant believed that the deceased intended to shoot him,—it was not the duty of the defendant to retreat, if thereby he would have increased his danger.

Norman & Son, for appellant.

Wm. L. Martin, Attorney-General, for the State.

CLOPTON, J.—It is not contended that the charge given by the court is legally incorrect. The only objections urged are, that there is no evidence on which to base the charge, and that it is involved. We have repeatedly held, that giving an abstract charge, or one too general, obscure or ambiguous, if legally correct, will not reverse the judgment, unless it appears the jury were thereby misled. But we do not regard the charge as obnoxious to the objections urged. The defendant himself testified, that he was approaching the house in which deceased was, and when about sixty feet from the door he heard deceased cursing him; that cursing deceased in reply, he continued walking toward the house, and when about thirty feet distant, deceased came

to the door with his gun and fired, defendant himself firing immediately thereafter—the firing being nearly simultaneous. The charge is based substantially on these facts, with the additional facts, that the difficulty occurred in the night-time, as to which there is no dispute, and that deceased did not know that defendant was approaching or near the house; there being no evidence that deceased knew, or had reason to suppose, that defendant was going to the house, until he recognized his voice. The charge is not abstract.

The charges requested by defendant were properly refused. They invoke the right of self-defense. It is reasonably apparent that defendant could have avoided the killing, by retiring, or going away, when he first heard deceased cursing him; instead of doing so, he continued advancing towards the house, cursing deceased. Each of the charges ignores the inquiry, whether the defendant was free from fault—whether he said or did anything for the purpose of provoking a difficulty, or was disregardful of the consequence of his wrongful words or acts, or whether he could have avoided the difficulty by declining the combat. The inquiry as to the necessity of shooting to prevent great bodily harm, and as to a reasonable mode of escape without apparently increasing his own danger, is limited to the period of time when deceased came to the door with his gun, after defendant had cursed him, and while he was approaching the house. Defendant can not contribute to bringing on the difficulty, and, voluntarily and unnecessarily placing himself in a situation of danger, excuse killing his adversary on the right of self-defense.—*Tesney v. State,* 77 Ala. 33; *DeArman v. State,* 71 Ala. 351.

Affirmed.